*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REMI ANTHONY WEST,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
9:48 AM

No. 370905
St. Clair Circuit Court
LC No. 22-002220-FH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant, Remi Anthony West, pleaded guilty to possession with intent to deliver (PWID) 50 to 449 grams of cocaine, MCL 333.7401(2)(a)(*iii*); possession of less than 25 grams of oxycodone, MCL 333.7403(2)(a)(*v*); three counts of resisting or obstructing a police officer, MCL 750.81d(1); and possession of psilocybin, MCL 333.7403(2)(c). The trial court, Judge Cynthia A. Lane, sentenced West as a third-offense habitual offender, MCL 769.11, to 12 to 40 years' imprisonment for PWID cocaine, 4 to 8 years' imprisonment for possession of oxycodone, 2 to 4 years' imprisonment for each of the resisting or obstructing a police officer convictions, and five days' imprisonment for possession of psilocybin. West appeals by leave granted,[1] arguing that Judge Lane denied him his right to allocution during sentencing. We agree and remand for resentencing before a different judge.

## I. FACTUAL BACKGROUND

Considering the limited issue presented in this appeal, the facts underlying West's convictions are not relevant. After West pleaded guilty as stated above, he failed to appear at sentencing. Judge Lane issued a bench warrant for his arrest, and he was eventually taken into

---

[1] *People v West*, unpublished order of the Court of Appeals, entered June 20, 2024 (Docket No. 370905).

custody.  Before sentencing, several persons wrote letters on West's behalf, which they sent to Judge Lane.  At the sentencing hearing, during West's opportunity to allocute, he stated as follows:

> *THE DEFENDANT:*  First and foremost, I want to apologize to my mother and to my family for disappointing them with the choices I've made.  I will always be a man to take full responsibility for my actions that I did and diminishing our community.

Judge Lane interjected, and the follow colloquy ensued:

> *THE COURT:*  Then why did you run from the police when—

> *THE DEFENDANT:*  I was scared of my 10 year sentence—I mean, Mrs. Cynthia Lane.  I was—

> *THE COURT:*  I mean isn't, hold on.

> *THE DEFENDANT:*  My bad.

> *THE COURT:*  If you're going to take responsibility for your actions—

> *THE DEFENDANT:*  Yes, ma'am.

> *THE COURT:*  —and you know police are there to take you into custody, first of all, why did you run to begin with which just got you more convictions.  And secondly, when you knew they were there to take you into custody after you didn't show up for your sentencing, why did you not just say, okay, here I am, I'm willing to face the music, so to speak.

> Isn't that taking responsibility for your actions?

> *THE DEFENDANT:*  Yes, ma'am, it is.  I was I—

> *THE COURT:*  So why didn't you?

> *THE DEFENDANT:*  I was coming to town to turn myself in and get the time with my kids.  But I was on the phone calling close family members because the mother of my children has went to work that I thought of, of my knowledge [sic].

> *THE COURT:*  So why didn't you just, why didn't you just go out on that porch and say, here I am?

> *THE DEFENDANT:*  I have a three year old in my custody that I wanted to make sure a family or [sic] a close friend came to get.  That was the only reason why it took them a little time.  But when they came in, I told them what it was and I had my daughter in the room.

> I understand how it looks.

Judge Lane then asked West what else he wanted to say. West explained that he intended to take advantage of the educational opportunities available to him in prison and obtain a business degree. He also indicated that he had a "huge support system," thanked the people who had supported him, and stated, "whatever . . . time that is given from [the court], I will be taking full advantage of and coming out a bigger and better man." Judge Lane again interjected and proceeded to argue with West:

> *THE COURT:* Well, it's very easy to say those things.

> *THE DEFENDANT:* I truly mean them. I truly mean them.

> *THE COURT:* But the actions that you have exhibited up to now tell me something different.

> *THE DEFENDANT:* Yes, ma'am.

> *THE COURT:* It's very easy to say, well, now that I'm about to face accountability for my choices, including the fact that you showed a high level of disrespect for this Court by not appearing for your sentencing.

> *THE DEFENDANT:* I apologize.

> *THE COURT:* And then when you knew police were there to take you into custody, you, you didn't do the adult thing and place yourself in their custody. You actively resisted their efforts to take you into custody after you had been gone for quite some time.

> *THE DEFENDANT:* Yes, ma'am.

> *THE COURT:* That is not the behavior of a principled person. The behavior that you exhibited in connection with the offenses for which you are sentencing you [sic] is not the behavior of a principled person.

> I've read these many letters . . . .

> \* \* \*

> And the person that they know and the person that you have presented to them is not the same person who committed these crimes. Is not the same person who marketed and distributed cocaine throughout our community.

> *THE DEFENDANT:* Yes, ma'am.

> *THE COURT:* And who introduced poison to other people. I'm sure all of the people who wrote these letters spoke from the heart. I'm sure all of those people are very sincere, but they don't know you, sir, as I know you. You should be ashamed of your behavior and yet you do not appear to be.

> *THE DEFENDANT:* No, I'm very ashamed of my behavior.

*THE COURT:* Very easy to say, sir. Very easy to say.

*THE DEFENDANT:* Yes, ma'am.

*THE COURT:* The behavior that you exhibited is inexcusable. Both by committing the offenses to which you pled guilty. By running away and not subjecting yourself to sentencing by this Court and being gone for a significant period of time. Left the state hoping not to be found and then coming back and when you knew police were there, you did not do the right thing. You actively resisted being taken into custody and potentially put those police officers in danger again as, which you did once before. I mean, you are not an innocent child.

*THE DEFENDANT:* Not at all.

*THE COURT:* You have had many opportunities to do better, and you have squandered them. . . .

\* \* \*

I think, sir, you are a manipulator. I think you have manipulated all those people who wrote those nice letters. I truly believe they were sincere but I truly believe you are not and I think you're dangerous for, not only because of the nature of the offenses of which you have been convicted. But I feel you're dangerous because of the way that you manipulate other people and the fact that you have manipulated them to the point, these, these good people who wrote these letters to the point that you have, shows me that you, you're not taking full responsibility here. And I don't know that you ever will. I hope you do—

*THE DEFENDANT:* I always will take—

*THE COURT:* —but I don't believe you have.

*THE DEFENDANT:* Yes, ma'am.

*THE COURT:* So I am prepared to sentence you in this case at this time.

Judge Lane then sentenced West as previously described. This appeal followed.

## II. ANALYSIS

West argues that he is entitled to resentencing because the trial court repeatedly interrupted and berated him during allocution, denying him his right to allocute. Because West failed to preserve his argument for our review by objecting at sentencing, our review is limited to plain error affecting his substantial rights. *People v Bailey*, 330 Mich App 41, 66; 944 NW2d 370 (2019). Under the plain-error rule, a defendant must establish: "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). We must then consider

-4-

"whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id.* Our Supreme Court has recognized that the denial of the right to allocution cannot be excused even when it could not have impacted the sentence imposed, given the "historical foundation" of the right, the important interests and purposes it serves, and the serious effect of its denial on "the fairness and integrity of the judicial proceeding." *People v Petty*, 469 Mich 108, 120-123; 665 NW2d 443 (2003).

At the time of West's sentencing, MCR 6.425(D)(1)(c) provided that a trial court must "give the defendant . . . an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]"[2] "Accordingly, this court rule means that the trial court must make it possible for a defendant who wishes to allocute to be able to do so before the sentence is imposed." *People v Petit*, 466 Mich 624, 628; 648 NW2d 193 (2002). "The right of allocution allows a defendant to speak in mitigation of the sentence and offers defendants an occasion to accept responsibility and begin the process of atonement." *Bailey*, 330 Mich App at 66 (quotation marks and citation omitted). Although a trial court may interrupt a defendant's allocution to seek clarification of the defendant's statements, "allocution is the *defendant's* opportunity to *address the court*, not the court's opportunity to conduct an interrogation or deliver a lecture." *People v Dixon-Bey*, 340 Mich App 292, 302; 985 NW2d 904 (2022). The trial court may not effectively cross-examine the defendant during allocution. *Id*. "The trial court may deliver a lecture or express its disbelief afterwards, during sentencing. During allocution, it must permit the defendant a meaningful opportunity to speak." *Id*.

Judge Lane denied West a meaningful opportunity to speak during allocution. After West stated that he accepted responsibility for his actions, Judge Lane asked him why he ran from the police and engaged in a back-and-forth discussion with him, effectively cross-examining him regarding whether he truly accepted responsibility. After Judge Lane asked West what else he wanted to say, and West discussed his intent to obtain a business degree and "com[e] out a bigger and better man," Judge Lane diminished West's statements by remarking that "it's very easy to say those things," and accused West of being disrespectful to the court by failing to appear at the previously scheduled sentencing hearing. Judge Lane then reiterated her belief that West failed to accept responsibility for his actions because he resisted being taken into custody. She also described West as "a manipulator" who "manipulated" the people who wrote letters on his behalf and remarked that those people "don't know you, sir, as I know you" despite her limited interactions with West. Further, Judge Lane described his behavior as "inexcusable," and dismissed his responses to her berating statements by repeatedly remarking that his expressions of shame and remorse were "easy to say."

Instead of waiting until West was finished with his allocution to voice her thoughts, Judge Lane continually interrupted, interrogated, and lectured him, denying him a meaningful opportunity to speak. See *Dixon-Bey*, 340 Mich App at 302. In doing so, Judge Lane denied West his right of allocution. Considering how often Judge Lane interrupted West and the argumentative nature of her comments, we conclude that her conduct amounted to plain error that affected West's

---

[2] Our Supreme Court has since amended MCR 6.425(D)(1)(c), but the court rule still provides defendants a right of allocution.

-5-

substantial rights and that remand for resentencing is required. See *Petty*, 469 Mich at 120-123. Further, given the nature and extent of this conduct, as well as the fact that this issue has arisen with some frequency in recent years regarding Judge Lane,[3] we agree with defendant that remand for resentencing before a different judge is appropriate despite any inefficiency that may attend doing so. See generally *Dixon-Bey*, 340 Mich App at 304 (identifying relevant considerations in reassignment determination). We therefore vacate West's sentence and remand for resentencing before a different judge. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[3] See, e.g., *People v Braun*, unpublished per curiam opinion of the Court of Appeals, issued November 17, 2025 (Docket No. 365738); *People v Gault*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2025 (Docket No. 367328); *People v Killian*, unpublished per curiam opinion of the Court of Appeals, issued November 20, 2024 (Docket No. 367272); *People v Spencer*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2023 (Docket No. 364606).